UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

HEIDI C. WOODSUM,

                        Plaintiff,

        v.

CAROLYN W. COLVIN, Acting Commissioner
of Social Security,

                        Defendant.

Case No. C16-5219-RAJ

**ORDER REVERSING AND
REMANDING CASE FOR
FURTHER ADMINISTRATIVE
PROCEEDINGS**

        Heidi C. Woodsum seeks review of the denial of her application for Supplemental Security Income.  Ms. Woodsum contends the ALJ erroneously (1) failed to consider her physical impairments at step two, and (2) evaluated the examining opinions of Terilee Wingate, Ph.D. and her own testimony.  Dkt. 11 at 1.  Ms. Woodsum contends these errors resulted in a residual functional capacity (RFC) determination that failed to account for all of her limitations.  *Id.*  As discussed below, the Court **REVERSES** the Commissioner's final decision and **REMANDS** the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

**BACKGROUND**

        In August 2012, Ms. Woodsum applied for benefits, alleging disability as of May 19,

ORDER REVERSING AND REMANDING
CASE FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 1

2011.  Tr. 12, 267-78.  Ms. Woodsum's application was denied initially and on reconsideration.

Tr. 145-58, 157-68.  After the ALJ conducted a hearing on September 17, 2014, the ALJ issued a

decision finding Ms. Woodsum not disabled.  Tr. 12-22.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[1] the ALJ found:

**Step one:**  Ms. Woodsum has not engaged in substantial gainful activity since August 27, 2012, the application date.

**Step two:**  Ms. Woodsum has the following severe impairments: Major depressive disorder; posttraumatic stress disorder (PTSD).

**Step three:**  These impairments do not meet or equal the requirements of a listed impairment.[2]

**Residual Functional Capacity:**  Ms. Woodsum can perform a full range of work at all exertional levels but with the following nonexertional limitations: She is limited to simple, unskilled work.  She can have occasional public contact and occasional coworker contact with no teamwork.

**Step four:**  Ms. Woodsum has no past relevant work.

**Step five:**  As there are jobs that exist in significant numbers in the national economy that Ms. Woodsum can perform, she is not disabled.

Tr. 12-22.  The Appeals Council denied Ms. Woodsum's request for review making the ALJ's

decision the Commissioner's final decision.  Tr. 1-7.[3]

## DISCUSSION

### A.  Step 2 Consideration of Physical Impairments

Ms. Woodsum argues the ALJ harmfully erred at step two in evaluating her physical

impairments.  The Court disagrees.

---

[1] 20 C.F.R. §§ 404.1520, 416.920.
[2] 20 C.F.R. Part 404, Subpart P. Appendix 1.
[3] The rest of the procedural history is not relevant to the outcome of the case and is thus omitted.

ORDER REVERSING AND REMANDING
CASE FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 2

1    The Social Security Act (Act) defines "disability" as the "inability to engage in any

2    substantial gainful activity by reason of any medically determinable physical or mental

3    impairment which can be expected to result in death or which has lasted or can be expected to

4    last for a continuous period of not less than 12 months[.]"  42 U.S.C. §§ 423(d)(1)(A),

5    1382c(a)(3)(A).  At step two of the sequential evaluation, the Commissioner must determine

6    "whether the claimant has a medically severe impairment or combination of impairments."  *See*

7    *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996); 20 C.F.R. § 404.1520(a)(4)(ii).  The

8    claimant has the burden to show that (1) she has a medically determinable physical or mental

9    impairment, and (2) the medically determinable impairment is severe.  *See Bowen v. Yuckert*,

10   482 U.S. 137, 146 (1987).  A "'physical or mental impairment' is an impairment that results

11   from anatomical, physiological, or psychological abnormalities which are demonstrable by

12   medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §§ 423(d)(3),

13   1382c(a)(3)(D).  Thus, to establish the existence of a severe impairment, the claimant must

14   provide medical evidence consisting of signs, symptoms, and laboratory findings.  20 C.F.R. §

15   404.1508.  However, "'[r]egardless of how many symptoms an individual alleges, or how

16   genuine the individual's complaints may appear to be, the existence of a medically determinable

17   physical or mental impairment cannot be established in the absence of objective medical

18   abnormalities; i.e., medical signs and laboratory findings[.]'"  *Ukolov v. Barnhart*, 420 F.3d

19   1002, 1005 (9th Cir. 2005) (quoting SSR 96-4p).

20        In addition to producing evidence of a medically determinable physical or mental

21   impairment, the claimant bears the burden at step two of establishing that the impairment or

22   impairments is "severe."  *See Bowen*, 482 U.S. at 146.  An impairment or combination of

23   impairments is severe if it significantly limits the claimant's physical or mental ability to do

ORDER REVERSING AND REMANDING
CASE FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 3

basic work activities.  20 C.F.R. §§ 404.1520(c), 404.1521(a).   "The step two inquiry is a de

minimus screening device to dispose of groundless claims."  *Id*.  An impairment or combination

of impairments may be found "'not severe' only if the evidence establishes a slight abnormality

that has 'no more than a minimal effect on an individual's ability to work.'"  *Smolen*, 80 F.3d at

1290 (citing *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988)).  However, the claimant has

the burden of proving his "impairments or their symptoms affect [his] ability to perform basic

work activities."  *Edlund v. Massanari*, 253 F.3d 1152, 1159-60 (9th Cir. 2001).

Ms. Woodsum argues that that the record shows she has a history of chronic shoulder

pain and "imaging of her cervical and thoracic spine showed widespread degeneration."[4]  Dkt.

11 at 13.  First, although there are mentions of "shoulder pain" in the record these findings do not

appear to be based upon or supported by objective medical abnormalities; i.e., medical signs and

laboratory findings.[5]  Ms. Woodsum's symptom complaints alone are insufficient to establish a

medically determinable physical or mental impairment.  *See Ukolov*, 420 F.3d at 1005; 20 C.F.R.

§ 416.929; SSR 96-4p.  Second, even if this evidence were sufficient to establish a medically

determinable impairment, a diagnosis, without more, is insufficient to establish a severe

impairment.  *See, e.g., Bowen*, 482 U.S. at 146; *Febach v. Colvin*, 580 F. App'x. 530, 531 (9th

Cir. 2014) (a "diagnosis alone is insufficient for finding a 'severe' impairment").  Ms. Woodsum

fails to point to any evidence indicating that either her alleged shoulder or back impairments

---

[4] Ms. Woodsum also indicates that the ALJ failed to mention migraines in his written decision or factor in their functional effects.  Dkt. 11 at 13.  However, there appear to be only a few isolated mentions of migraines in the record and no evidence that they have a functional impact on Ms. Woodsum's ability to perform basic work activities.  *See, e.g.*, Tr. 677, 748.

[5] There are a few mentions of shoulder pain apparently related to a motor vehicle accident in October 2012 as well as some mentions of shoulder pain prior to the accident.  *See, e.g.*, Tr. 361, 369, 534, 553, 559, 565, 567-69, 571, 611, 613, 634, 648.  However, other than references to "shoulder pain" there are no medical signs or laboratory findings in the record establishing the underlying cause of Ms. Woodsum's complaints of shoulder pain.

1   affected her ability to perform basic work activities. [6]  *See Edlund*, 253 F.3d at 1159-60.  Ms.

2   Woodsum did not cite back, neck or shoulder problems as limiting her ability to work in

3   response to the ALJ's inquiry at the hearing.  Tr. 34-36.  Rather, Ms. Woodsum cited only

4   mental health issues as impairments preventing her from working.  *Id.*  Moreover, Ms. Woodsum

5   does not point to any clinical findings in the record indicating the presence of any significant

6   work-related limitations stemming from her alleged physical impairments.

7       Ms. Woodsum also argues that the ALJ "should have pursued an investigation of the

8   severity of [her] chronic shoulder pain."  Dkt. 11 at 13.  The ALJ's duty to develop the record is

9   triggered "when there is ambiguous evidence or when the record is inadequate to allow for

10   proper evaluation of the evidence."  *Mays v. Massanari*, 276 F.3d 453, 460 (9th Cir. 2001).

11   However, this principle cannot be used to shift the claimant's burden of proving disability to the

12   ALJ.  *Id.* at 460 (noting it is the claimant's "duty to prove she was disabled" and she cannot

13   "shift her own burden" to the ALJ by virtue of the ALJ's duty to develop the record).  Here, Ms.

14   Woodsum fails to point to clinical evidence indicating that her alleged shoulder impairment

15   affected her ability to perform basic work activities.  Requiring the ALJ to further "investigate"

16   in this circumstance would improperly shift the burden of establishing disability from Ms.

17   Woodsum to the ALJ.

18       Accordingly, Ms. Woodsum fails to establish the ALJ harmfully erred at step two in

19   evaluating her physical impairments.

20   _____

21   [6] There is a treatment note from a follow-up appointment in December 2012, about a month after
    Ms. Woodsum's motor vehicle accident, in which pain, stiffness and some reduced range of

22   motion is noted in Ms. Woodsum's shoulders.  Tr. 401.  However, subsequent records make no
    mention of continued reduced range of motion and on examination in November 2013, Ms.

23   Woodsum denied any chronic pain and a review of her musculoskeletal systems was found to be
    normal.  Tr. 677.

ORDER REVERSING AND REMANDING
CASE FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 5

**B.  Consideration of Polysubstance Abuse and the Drug Addiction and Alcoholism (DAA) Analysis**

Ms. Woodsum contends the ALJ erred in evaluating Dr. Wingate's examining opinions as well as her own testimony.  However, the Court does not discuss these contentions in detail because, as discussed below, the ALJ's decision suffers from a more fundamental legal error requiring remand for further proceedings: the failure to properly analyze Ms. Woodsum's substance abuse.

The Court may set aside the Commissioner's denial of disability benefits where the ALJ committed legal error.  *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).  Where there is significant evidence of alcohol and drug use in the record, as there is in this case, the ALJ must conduct a specific drug addiction and alcoholism (DAA) analysis to determine whether a claimant's disabling limitations remain absent the use of drugs or alcohol.

The regulations provide that if DAA is a contributing factor material to the determination of disability, a claimant cannot be considered disabled for purposes of awarding benefits.  *See* 42 U.S.C. § 1382c(a)(3)(J); 20 C.F.R. §§ 404.1535 and 416.935.  Thus, when DAA is present, the Ninth Circuit has established a specific procedure that must be applied to determine whether DAA is a contributing factor material to the determination of disability.  *See* 20 C.F.R. §§ 404.1535 and 416.935; *Bustamante v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001).  First, the ALJ must complete the five-step disability analysis described above without separating out the effects of DAA.  *See Bustamante*, 262 F.3d at 956 (remanding "with instructions that the ALJ proceed with step three (and four and five, if necessary) of the disability determination without attempting to separate out the impact of … alcohol abuse.").  If the ALJ finds the claimant is not disabled under the five step inquiry, then the claimant is not entitled to benefits and there is no

ORDER REVERSING AND REMANDING
CASE FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 6

1    need to proceed with the analysis regarding DAA under 20 C.F.R. §§ 404.1535 or 416.935.  *Id.*

2    On the other hand, if the ALJ finds the claimant disabled without separating out the impacts of

3    DAA, the ALJ must then perform the sequential evaluation process a second time, separating out

4    the impact of the DAA, to determine whether she would remain disabled if she stopped using

5    drugs or alcohol.  *See id.*; *Bustamante*, 262 F.3d at 956.  If the ALJ finds the claimant's

6    remaining limitations are disabling after completing that second evaluation, then DAA is not a

7    contributing factor material to the determination of disability and the claimant is disabled.  20

8    C.F.R. §§ 404.1535(b)(2)(ii), 416.935(b)(2)(ii).  On the other hand, if after the second evaluation

9    the ALJ determines a claimant's remaining limitations would not be disabling, the ALJ must find

10   that the claimant's DAA is a contributing factor material to the determination of disability and

11   the claimant is not disabled.  20 C.F.R. §§ 404.1535(b)(2)(ii), 416.935(b)(2)(i).

12         Here, the ALJ found major depressive disorder and PTSD to be severe impairments at

13   step two.  The ALJ did not specifically include substance abuse as a severe impairment at step

14   two.  However, polysubstance abuse is diagnosed repeatedly by acceptable medical sources

15   throughout the record.  *See, e.g.*, Tr. 400, 438, 444, 478, 487, 534, 537-38, 539-40, 640, 678,

16   748.  Moreover, the ALJ's findings clearly indicate that substance abuse had a significant impact

17   on Ms. Woodsum's mental impairments and that the ALJ attempted to improperly factor out the

18   effects of substance abuse prematurely in finding Ms. Woodsum not disabled on his initial five-

19   step evaluation.  This is evidenced by the ALJ's determination that "objective medical evidence

20   shows that exacerbations in [Ms. Woodsum's] … alleged mental health symptoms are caused by

21   her substance abuse[.]"  Tr. 16.  It is further evidenced by the fact that the ALJ discounted Dr.

22   Wingate's examining opinion, which assessed various marked limitations in mental functioning,

23   in part, on the grounds that it "completely fails to take into account the claimant's substance

ORDER REVERSING AND REMANDING
CASE FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 7

1  abuse and the impact it has on her mental impairments." Tr. 20, 370-73, 757-64.

2  These findings, and the ALJ's analysis as a whole, indicate that he considered substance

3  abuse to be more than a slight abnormality and to have more than a deminimus effect on Ms.

4  Woodsum's ability to function.  As such, in the first instance, the ALJ should have evaluated the

5  severity of Ms. Woodsum's polysubstance abuse at step two.  Moreover, given that substance

6  abuse plays a significant role in the ALJ's evaluation of the evidence, the ALJ was required to

7  conduct a specific DAA analysis.  20 C.F.R §§ 404.1535, 416.935; 42 U.S.C. § 423(d)(2)(C).

8  Here, the ALJ erred in failing to do so.  The ALJ did not mention or discuss the application of a

9  DAA analysis in his decision.  As noted above, the ALJ was required to conduct the five-step

10  inquiry without first determining the impact of substance abuse on Ms. Woodsum's other

11  impairments.  *See Bustamante*, 262 F.3d 949.  Instead, as evidenced by the findings mentioned

12  above, the ALJ improperly conducted the initial five-step inquiry prematurely separating out the

13  impact of DAA on Ms. Woodsum's mental impairments.

14  In sum, although substance abuse was a major consideration in the ALJ's nondisability

15  determination, the ALJ erred by failing to apply the regulations and Ninth Circuit case law

16  requiring the ALJ to apply a specific two-step DAA analysis.  This error is not harmless as it

17  renders the ALJ's findings here unreliable.  Remand is required because the Court cannot itself

18  apply the five-step disability inquiry, including the two-step substance abuse analysis.  Rather it

19  is the role of the ALJ, not the Court, to properly evaluate Ms. Woodsum's disability claim.  *See,*

20  *e.g., Securities and Exchange Commission v. Chenery Corp.*, 332 U.S. 194, 196 (1947)

21  (emphasizing "a simple but fundamental rule of administrative law" that "a reviewing court, in

22  dealing with a determination or judgment which an administrative agency alone is authorized to

23  make, must judge the propriety of such action solely by the grounds invoked by the agency" and

1  "[i]f those grounds are inadequate or improper, the court is powerless to affirm the

2  administrative action by substituting what it considers to be a more adequate or proper basis.").

3  Moreover, the Court need not address Ms. Woodsum's other claimed errors because they occur

4  in the context of a disability determination that failed to follow the proper disability procedures

5  and analysis.  Because, in this case, Ms. Woodsum's claims of error with respect to Dr.

6  Wingate's opinions and her own testimony are "inextricably intertwined" with her substance

7  abuse, it is appropriate for the Court to remand for the ALJ to separate out the impact of

8  substance abuse through a proper DAA analysis.  *Elmore v. Astrue*, 2012 WL 3240285 (W.D.

9  Wa., July 16, 2012) (holding the Court need not reach claimant's other assignments of errors

10  because they are inextricably intertwined with the claimant's substance abuse and it was

11  appropriate for the Court to leave it to the Commissioner to "untangle" the impact of substance

12  abuse).[7]

13  The Court is aware that the parties did not specifically challenge the ALJ's failure to

14  apply the two-step DAA analysis.[8]  Normally, the Court need not address errors that are not

15

16  [7] Although the Court need not necessarily reach the issue in light of the ALJ's error in applying the DAA analysis, the Court notes that the ALJ also improperly discounted Dr. Wingate's August 2012 and June 2014 opinions as based primarily on Ms. Woodsum's self-reports.  *See*

17  *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) citing *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) ("If a treating provider's opinions are based 'to a large extent' on an applicant's self-reports and not on clinical evidence, and the ALJ finds the applicant not credible,

18  the ALJ may discount the treating provider's opinion.").  Here, in addition to Ms. Woodsum's self-reported symptoms, Dr. Wingate's opinions were based on mental status examinations

19  (MSE), clinical interviews and her own personal observations.  Tr. 373-74, 760-61.  Contrary to the ALJ's finding, there is no indication Dr. Wingate relied more heavily on Ms. Woodsum's

20  self-reports than on her clinical observations in reaching her opinions.  *See Ghanim*, 763 F.3d at

21  1162 ("[W]hen the opinion is not more heavily based on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion.").  Moreover, the Court

22  agrees with Ms. Woodsum that the ALJ erred in failing to address Dr. Wingate's November 2011 opinion entirely and that, in reevaluating the evidence and applying the proper DAA

23  analysis on remand, the ALJ should also address that opinion.  Dkt. 11 at 9; Tr. 360-63.
    [8] Ms. Woodsum did, however, challenge the ALJ's rejection of Dr. Wingate's opinions based on

specifically and distinctly argued.  However, the ALJ's failure to apply the proper DAA analysis

is in the nature of a structural error and central to the validity of the disability determination

process.[9]  Moreover, even if considered under a harmless error analysis, the ALJ's "muddled

consideration" of Ms. Woodsum's substance abuse prevents a clear determination that the error

was harmless.  *Woolery v. Colvin*, 2013 WL 3294890 (W.D. Wash. June 28, 2013) (finding the

ALJ erred in failing to conduct a proper DAA analysis and that "the ALJ's muddled

consideration of plaintiff's alcohol abuse prevents a clear finding that the ALJ's error was

harmless."); *see Maloney v. Comm'r of Soc. Sec. Admin.*, 2014 WL 3871214 (D. Or. August 5,

2014) ("The court cannot say the instant error [in failing to follow the two-step DAA analysis]

was harmless, because the ALJ considered the same type of substance-abuse-related evidence

which, by law, she was precluded from considering in the initial sequential analysis.").  As noted

above, the ALJ's failure to apply the proper DAA analysis in this case renders his findings

unreliable which, in turn, renders proper consideration of Ms. Woodsum's other claimed errors

problematic.  As such, the ALJ's failure to apply the proper DAA analysis in this case is an

appropriate basis to remand this matter for further proceedings.

## CONCLUSION

For the foregoing reasons, the Commissioner's final decision is **REVERSED** and this

---

her failure to account for the impact of substance abuse on Ms. Woodsum's mental impairments.
Dkt. 11 at 10-11.

[9] "Structural errors are defects affecting the framework within which an adjudication proceeds,
rather than an error that occurred in an otherwise proper proceeding."  *Hanif v. Astrue*, 2011 WL
6140867 (W.D. Wash., Nov. 18, 2011) (citing *Neder v. United States*, 527 U.S. 1, 8, 119 S.Ct.
1827, 144 L.Ed.2d 35 (1999)).  Moreover, "while structural errors have typically been analyzed
in the context of criminal matters, the Ninth Circuit has stated '[w]e do not hold that an error in
a civil context can never be structural.'"  *Id.* (quoting *Al Haemain Islamic Foundation Inc. v. U.S.
Dept. of Treasury*, 660 F.3d 1019, 1042 (9th Cir. 2011) *amended and superseded by* 686 F.3d
965 (2012)).

ORDER REVERSING AND REMANDING
CASE FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 10

1    case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. §

2    405(g).

3          On remand, the ALJ should evaluate the severity of polysubstance abuse at step two and

4    proceed with a proper five-step disability determination without attempting to separate out the

5    impact of Ms. Woodsum's substance abuse.  Only if the ALJ determines Ms. Woodsum is

6    disabled under the five-step inquiry, should the ALJ go on to consider whether substance abuse

7    is a contributing factor material to that determination.  In applying the proper DAA analysis, the

8    ALJ shall also reevaluate the medical evidence, Ms. Woodsum's testimony, and develop the

9    record as needed.

10          DATED this 30th day of December, 2016.

11

12

13          _____
             The Honorable Richard A. Jones
14          United States District Judge

15

16

17

18

19

20

21

22

23

ORDER REVERSING AND REMANDING
CASE FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 11